The final case on the call this morning is 121-124, Better Government Association v. Illinois High School Association and School District No. 230, I believe. Counsel for the appellees, you have agreed to divide your time. You will be responsible for keeping track of that 14 and 6. Appellant, you may proceed. May it please the Court, good morning, Counsel. The Illinois High School Association is a membership organization made up overwhelmingly of public high schools. Would you identify yourself for the record? I apologize, Matt Topek, your Honor, for the Better Government Association. The IHSA is a membership organization made up of overwhelmingly public high schools. IHSA regulates and promotes school-sponsored high school sports and other activities across Illinois. According to IHSA's own documents, these activities offer, quote, enrichment to the educational experience, take place, quote, in an educational setting, and serve to, quote, enhance the accomplishment of desired educational goals. It is undisputed that IHSA is a state actor for civil rights purposes and therefore acts under color of law. The First District held that the public has no right to information about IHSA's work. The premise underlying the First District's reasoning was that the government is not required to offer the activities that are organized and regulated by IHSA. In other words, for the purposes of both sections of FOIA that are at issue in this case, the First District held that a function is only governmental if the government is legally required to perform the function. That test should be rejected. It is true that a function that government is required to perform is a governmental function, but those are not the only functions that are governmental. The First District's narrow test is contrary to the plain meaning of the term and the purpose of these provisions and is unsupported by legal doctrines from any other similar fields. Can I ask you a couple questions? Yes. Am I correct that in the trial court and the appellate court that both sides agreed that the proper test, and I think that's what you're talking about, the proper test here, is the so-called Rockford factors. Is that correct? Everyone agree to that? We have two different issues. So that is correct as to the issue of the subsidiary body provision of FOIA. Separate from that is Section 7.2 for which the Rockford test would not apply. So if I could just take you to the Rockford test for a moment. It's true, are you agreeing then that the argument that you've made in your briefs that we should somehow redefine a test, the factors we should be looking at, is an argument that you've never made before? I think we've made clear from the beginning that while that's the appropriate test, there are additional factors that could also be considered that are consistent with how other cases have approached it. So the kinds of things that we've looked at in addition to strictly those factors are the state actor issue, the fact that they've asked for tort. And that was always before? Correct, correct. And I'm sorry if I could take you to the public bodies subsidiary section. Sure. Let's start there. We're looking at the statute defining specifically FOIA and not tort immunity and not state actors in terms of 1983 actions. But we're looking at our state statute. And I think you've just indicated there are other states certainly have looked at their own statutes and come to various different kinds of positions. But certainly we should look at our statute. So we're looking at the section that defines public bodies. And it sets out a number of defined specific public bodies, state universities, cities, villages, et cetera. So my first question, and then this unusual language of any subsidiary bodies of any of the foregoing. My first question is you have argued that IHS is a public body because it is a subsidiary. I'm asking you to which body of the foregoing are they a subsidiary? It's a subsidiary of the school districts that make up its membership. So our analysis when we finally get to applying some kind of test should be the relationship of the school districts to IHSA. Is that right? Correct. Okay. Then my next question about the statute is legislative intent. Of course, we're going to look at the plain language first to determine legislative intent. So, for example, when we look at other states, we're going to look at their statutes and we know they use different language. And they may be helpful to us to determine standards or application. But certainly we should start with our own statute. So in terms of subsidiary bodies, how do we go about defining that? Should we use a dictionary for subsidiary? I think it's difficult to apply the concept of subsidiary that might apply in corporate law and what I suspect you would find in most definitions into this situation. What we do have, though, is a series of decisions by at least the appellate courts setting forth what's been called a functional equivalency test for subsidiary bodies. And the General Assembly at no point has done anything to change that other than arguably sort of expand it under Section 7-2. And so what you basically have is acquiescence by the General Assembly to that test, to the Rockford test, for the subsidiary body question because those cases go very, very far back. I think Rockford was in the 7th. So we need not look at, for example, the examples that the statute gives us, including but not limited to committees and subcommittees. Should we look at how committees and subcommittees relate to these other specifically named public bodies in order to determine what factors we should look at as to what a subsidiary body is? So the statute does say included but not limited to. So it does provide examples, but it doesn't purport for those to be the kinds of examples that are exclusive. Could those examples lead us to some kind of answers as to what the legislature meant by this unusual term? I don't think it provides a lot of guidance as to the broader term subsidiary body as it's been interpreted. Plain language doesn't get us there. Plain language doesn't get us there. I think it's difficult to, under just the plain language of subsidiary body, to get to the answer of how it applies to other entities like this. So finally, you've argued that it's really legislative acquiescence. The Rockford test has been out there for some time, and the legislature has not in any way rejected that. So why shouldn't we just apply the test that we've been using, and the legislature seems to have agreed? So I think you can apply that test, and you will get to the same conclusion that we're asking for here. But really all we're asking is that the test not be closed-ended, that there be circumstances may arise in which you may want to consider some additional factors that are consistent with the test, not to throw out the test entirely. So that's the way that we would conceive how that test would play. There's no dispute between anybody that those factors are the factors to be considered. They're the primary factors to be considered. All we're saying is you should leave the door open to some additional considerations that I think are important here. First and foremost being the fact that IHSA acts under color of law, that they're a state actor for civil rights purposes. And when you look at what that means and what the purpose of that is, it's entirely consistent with also saying that entity is a public body under FOIA as well. I have to go back, I'm sorry to interrupt you again, but we just went through this exercise of talking about our statute and what our statute means. In the Michigan case, for example, the court there rejected the idea of state actor being some kind of determinative factor here in saying a legislature can certainly define a public body for these purposes in a different way than perhaps a court would define a state actor in a 1983 action. Doesn't that make sense? Yes, that's true. And that is a very good point because when you look at the Michigan statute, it is very different from the Illinois statute. It doesn't use this functional equivalency test that Illinois has used and other states have used. There are very specific criteria set forth in the statute that say when an entity is a public body or not a public body. The much better analogy is the Tennessee case, City Press, which used a similar test for Rockford, this functional equivalence type of a test, and applied that and said, yes, they're a public body, and looked to the state actor finding against the Tennessee High School Association as being relevant or an additional reason to come to that same conclusion. So I think it is correct that we'd have to look at each different statute in different states in order to apply that reasoning necessarily, but the much closer corollary is in Tennessee and not in Michigan. What is the BJA's interest in obtaining IHSA's contracts and records with other private entities like Gatorade when there's no taxpayer dollars involved? So it has long been held, and it's expressly clear in the statute, that a requester doesn't have to justify the purpose of their request. Now, as to what the public interest is in release of this kind of information, whether tax dollars are involved is not quite that simple of a question. It is true that as IHSA currently sits, they are not collecting tax dollars directly. They have the authority to charge membership dues to their school districts if they've done it in the past. If they do that again, those are clearly tax dollars. But what they do have is the ability to make money from things that are paid for with tax dollars. So when student athletes compete in high school football and have a state championship, IHSA is earning money from their efforts. It's the schools that are fielding those teams. It's the schools that are paying for the uniforms. It's the schools that are paying for the coaches. They're students at public schools. So we have the issue about use of facilities, and there has been some fighting in the record in the earlier phases of this case about the extent to which IHSA pays market value for those facilities or not. We don't think there's a record that shows that they do pay market value. In fact, they take like 80 percent of the profits after a guarantee. So they are allowed to earn money from public facilities, which are taxpayer funded, but also from the efforts of school students, all of which is taxpayer funded as well. In the Brentwood Supreme Court state actor case, they found that that kind of support is financial support by the government of the private entity. Yes, it's a state actor case, and so you could say that the contexts are a little bit different, but it's really sort of a common sense financial economic point that you can be receiving the benefit of government funds even if you're not directly receiving the funds. Then organizations such as Special Olympics, for instance, which like IHSA organizes competitions for student athletes, should they be subject to FOIA too? Well, so let me segue to first the test of what's a governmental function, because if a function is not governmental, you're probably not going to have transparency under a subsidiary body or under Section 7-2. So the test that we're proposing is, yes, if the government's required to perform the function, then that is a governmental function. But in addition, if it's something that the government is impliedly authorized to conduct and it benefits the general public, then it's also a governmental function. So to take the Special Olympics example, I don't know that there's anything under law that authorizes the government to conduct Special Olympics. Unlike here, we have plenty of things throughout the school code which clearly contemplate the fact that schools are going to participate in athletics. That only gets you, though, to the question of whether it's a governmental function. And from there, under the subsidiary body analysis, you'd have to look at the additional Rockford factors. And so in the Special Olympics example, I don't think you would see any evidence that says the government is controlling the Special Olympics or that the board of the Special Olympics organization that runs it is overwhelmingly comprised of government officials. And it's also not, as far as I understand, it's unlike IHSA, it's not a membership organization. It essentially is the sum of its parts, which are overwhelmingly governmental entities here. So I think that it's, and this gets a little mixed up in the briefs, is just because you find that something that is a governmental function might read on some things that don't seem like what we should apply transparency to doesn't necessarily lead to the conclusion that those entities are subject to FOIA directly or indirectly because you have to consider all the other factors. And there were other examples like the NFL and like Disney World. And I think all those really, when you play it out through the different factors or the elements under Section 7-2, make clear why those kinds of entities are unlikely to be subject to FOIA under our interpretation of the statute, even though IHSA would be subject to FOIA directly or indirectly. Turning to the test for governmental function, because I think I'd like to focus my time there and then I'll try to deal with the other factors after that. The test that we put forth is justified by a number of different authorities. First, the plain text of the statute does not limit governmental function, does not limit subsidiary values to only things that the government is legally required to perform. Instead, it uses the term governmental function. And if the General Assembly wanted that to be very narrowly construed to only things the government is legally required to perform, it certainly could have done that. But it didn't. It left a flexible term and at least left open the possibility that something more than just legally required. Now, I'm not going to stand on that. It's just sort of the context that makes clear that there's nothing in the statute that requires such a limited approach. I think the core of where our definition comes from is from Black's Law Dictionary, which none of the parties here dispute to be an authoritative text for this purpose. And the way it defines governmental function is, quote, a government agency's conduct that is expressly or impliedly mandated or authorized by constitution, statute, or other law, and that is carried out for the benefit of the general public. And that is essentially what our test is with a few minor modifications. The next source that I think is authoritative in answering this question comes from tort immunity. Both the public business test under the Tort Immunity Act and the prior governmental proprietary distinction that was later eliminated. And I'm going to address each of those. In Carroll, this court defined public business as, quote, not limited or restricted to any particular class of the community. And yes, in the tort immunity cases, you also have very much in the forefront this issue of control. And that is a factor in the subsidiary body analysis. But it is not – I think we need to be careful about not importing control into just the question of what's a governmental function. And the reason that matters is because if it is a governmental function, but the government doesn't control it, that's where Section 7-2 comes more into play, which was added to the statute by the General Assembly long after the subsidiary body pieces. So even if the government doesn't control the actions of the entity, if it is a governmental function, if the government is authorized to do it, and if it benefits the general public, then it is a governmental function. And then we would go to the different elements under Section 7-2  And is that where control comes in? I mean, there must be some statutory relationship between the government and the private entity that is performing some kind of function. There has to be some nexus between the two. Yes. I don't know that I would limit it to the statutory nexus. But in the subsidiary body analysis, it's the control element that plays that function, that connects the government to the entity. So you would say the public body's discussion, there's a control element. Correct. Yes. But not in the public documents. Well, not in the question under Section 7-2. So Section 7-2 says that if the government has contracted with a private entity to perform a governmental function, then the records related to that function are considered the records of the public body.  And so in an instance in which the government has contracted out a governmental function, even if it doesn't control how that governmental function is performed, that's where Section 7-2 applies. And if you don't interpret Section 7-2 that way, then what you end up with is making it basically superfluous because it would be one and the same with the subsidiary body. And what governmental function of the school board has been delegated to IHSS? So it doesn't need necessarily to be coming from the school board itself. Why not? Well, because under the test that we proposed. School district. I'm sorry, I missed that. School district. That's the language of the statute. So how is the school district, the relationship between the school district and IHSS? So the function that's being performed is organizing school sports, regulating school sports. And in the absence of that being done by IHSS, then the school districts would need to do that. If you look at the Brentwood case, it talks about how regulating high school sports is an integral part of public schools, and that when they had an association do that, the association was really just performing the responsibilities that the districts would otherwise need to be performing. So the governmental function here is organizing, regulating, promoting high school sports throughout the state of Illinois. And that is something that benefits the general public. It is very clear from our constitution that the value of education is not simply what's in the classroom, that we intend to educate students to the best of their abilities. IHSA makes clear both in its own documents, it made clear in the Hood case that the general public benefits from what IHSA does, for the same reason that the general public benefits from education. So it's very clear that the benefit of education is not just simply to the students who are being educated, it's to society in general. And what IHSA does by its own documents, it says, it is enriching that experience to allow students to excel to the best of their abilities. And so therefore it benefits the general public, and it's a function that government is at least impliedly authorized to perform, and so therefore it should be considered a governmental function. And then from there we would go on and say under the subsidiary body test, we would need to look at control. IHSA itself has said in the Hood case that they're owned and controlled by government. But I understand the Hood case. We might discuss whether or not, what relevancy that has here. Based on the documents, the bylaws, the constitution, and the affidavit as to the day-to-day operations, what control is there between the school district and IHSA? The control comes from the board. So the board ultimately controls the day-to-day operations of IHSA. That board is overwhelmingly made up of school officials who are there in their capacity as school officials. They're principals of individual schools. Correct. Is there any relationship to the school district? Yes, so IHSA has made clear in Hood that those. I'm not asking what the. Okay. The Hood case where their arguments were rejected. Is there anything in the documents themselves that you can point to if I may, tie the school district to IHSA? I see you're out of time. I'm going to answer. So you have to be a principal of a school in order to serve on the IHSA board. If you're not a principal anymore, then you can't be on their board. So that's the connection back to. Any relationship to the school district? Those principals are there in their capacity as principals, not just truly as private citizens. Thank you, Mr. Topping. Thank you. Apple Lee. Good morning. My name is David Bressler, and I represent the Illinois High School Association. Mr. Galitz, representing District 230, and I have agreed to allocate our time 14-6, and I've instructed him to throw wads of paper at me if I exceed my time. So if he engages in strange behavior, that will explain it. May it please the court, counsel. I think it's important to stress what this case is not about. It's not about the privatization of traditional government functions, such as police powers, the obligations to create a library, economic development, or even creating an entity to fund the rehabilitation of the governor's mansion. Nor is it about privatizing a government function to shield information from the public. Rather, the case involves the very narrow question of whether a membership organization involved in organizing tournaments and providing and forcing rules of competition voted on by its members, is a government entity for all purposes under FOIA. Said another way, does subsidiary body include an association that a government entity joins? I submit that the answer is no. And as such, this case is quite limited to the unique facts pertaining to the IHSA, its structure, and its function vis-a-vis the private and public schools in Illinois. As the court is aware, the FOIA applies to legislative, executive, administrator, and advisory bodies of the state, school districts, and other explicitly government entities, and any subsidiary bodies thereof. That is a narrow test that our legislature has decided upon, and it is a narrower test even than that decided upon in Michigan, where the test was whether it is an agency of the state, which I would submit is the same thing as subsidiary body, or whether it's funded. And in Michigan, as the court is aware, they said that the Michigan High School Association was not subject to their FOIA laws. As reflected in our brief, my focus will be on the subsidiary body issue. Mr. Galitz will discuss, I anticipate will discuss 7.2. However, the documents requested here do not relate to the IHSA's transaction of public business for District 230 or any other member, but rather relate to its own business. In the proceedings below, all parties agreed that the Rockford and Hoff tests set forth the applicable test for what is a subsidiary body. Legal existence independent of government resolution, nature of the functions performed by the entities, and the degree of government control. While liberal construction applies, that only applies once the threshold test has been met. BGA advocates more of an open-end, ad hoc test, asking the court effectively to revise judicially what the legislature has declined to do. The test they propose is vague, result-oriented, and provides absolutely no guidance, and is actually unnecessary to serve the purposes behind FOIA, as reflected in legislative history. So let's talk first about what is the IHSA. It's created over 100 years by a group of athletic directors, not by any formal government resolution, or even with the approval of the state legislature or the schools that employed them, but as a means of coordinating competition. Numerous courts in this state and elsewhere have recognized it as a private, voluntary, not-for-profit association, of which both private and public schools are members. Not all high schools in Illinois belong to the IHSA, nor is there any requirement that a high school joins the IHSA located in Illinois. The IHSA does not educate, per se, but we hope that what we do, providing a framework for interscholastic athletics and activities, enhances the educational experience. Conceitedly, the IHSA does what no school could do, but which many private entities can and often do perform. It provides an agreed-upon framework for competition, including rules of eligibility and competition approved by its members, to assure that competition in those activities is on a level playing field. Can a high school that does not belong to the IHSA participate in post-season tournaments, basketball, baseball, football, volleyball? No, Your Honor. And there are some, like what I would call intermediate, recognized schools, so that they can compete during regular season but not in the tournament events. And what it does, in addition to the rulemaking, is it organizes and oversees statewide tournaments, probably unfortunately referred to as state tournaments, because that infers that there's some state involvement, which there isn't, in those events. Doing so includes renting public and private high school, college, and other facilities, raising money from commercial sponsors to put on those tournaments. The Court can take notice that just last weekend in Peoria, the Metro Center was rented. That's not a public high school facility. That is a facility for which rent was paid, just like anybody else. Could you help us follow the money a little bit? There was some arguments made that somehow this really is public money coming through because there are students, public high school students, who are participating in this. Never mind. Do you get any taxpayer dollars? No. Do you get dues from the members? No. There is authorization in the Constitution and bylaws to charge dues, but the organization hasn't charged dues for probably more than 20 years. So where does the money come from? It comes solely from two things. Number one is the ticket sales solely at the events we sponsor, at the state tournament events. In other words, during the regular season, when school A plays school B, no money goes to the IHSA. It's only when the IHSA rents a facility in a sectional or regional tournament, charges admission, and that goes all the way up to the state tournament, that the ticket sales in some, not all actually, not all events, go to the IHSA. Overwhelmingly, the money comes from private sponsorships. So State Farm has been a longtime sponsor of the IHSA, Country Mutual Insurance, some of these other companies that provide sponsorships to the IHSA. That's where the overwhelming amount of funding comes from. No money comes from the schools. Where does the money go? It goes to put on these tournaments. And what does that mean? So you rent venue? Not cheap. So during, again, the state tournament events only, we have to pay the officials. We have to rent the venues. You know, everything that comes with setting up a very large, you know, in the case of the high school or football in particular, a large event. Not cheap to put on, and that's where the money goes. And you're saying the money does not go to public entities, like the schools themselves? It does not, Your Honor. It does not, Your Honor. Again, it's a not-for-profit. There is, you know, by law, not-for-profits do not have owners, and so there's no dividend or anything like that. I suppose the benefit is that because the IHSA succeeds in securing the sponsorships, we don't have to charge dues. We don't have to charge admission fees for a school wishing to enter the tournament. I think it's important to understand that plaintiffs' and amici's briefs contain numerous inaccuracies as to what the IHSA is and grossly overstates the IHSA's role. No business was transferred to the IHSA by the government, nor was IHSA created as a subterfuge to avoid FOIA scrutiny. IHSA's governance only applies to the activities it oversees. There are many activities, including both team and club sports, at IHSA schools which do not fall under IHSA authority. Examples include ice hockey, fencing, weightlifting, rowing, until recently lacrosse, which IHSA recently brought in as a sport under its jurisdiction. All of these are activities that are conducted at these schools over which IHSA has absolutely no jurisdiction. IHSA governance also does not apply outside the context of the activities in which its members participate. So while it's true that student athletes and participants and coaches must meet scholastic and other requirements as a condition of eligibility for participation, the rules don't apply outside that realm. We don't tell schools who they can hire. We don't tell them what they need to do for school discipline or academics or anything like that. It's only in the context of if you want to participate in an IHSA-sponsored event, these are the eligibility qualifications. We don't reach into the school like they, and we're not that overarching as they allege. As we discussed, we don't earn revenue from the member schools. We get no revenue from regular season competition. We're governed by an elected board of directors who in their capacity don't apply, don't answer to the schools which employ them. It's not as if a school says, we are going to designate Principal X to sit on the board. They have to be principals to sit on the board, but it's not because the school chose them to sit on the board. And as indicated in our briefs, if there's a change of jobs, they keep their seat as long as they otherwise remain eligible, and that has happened. Do they move from district to district? No, because then each district has to have a representative. So imagine like a senator leaving Illinois and moving somewhere else. You couldn't continue to be a senator in Illinois. But if you move within Illinois, you could still be a senator. Do they have anything to say about who can participate in a high school sport? For example, who's eligible to play? Well, the IHSA bylaws address that, and that's an agreement among the member schools in terms of what the eligibility requirements are, and they are extensive. They're included in the briefing. It includes residency requirements, eligibility, scholastic standing, no recruiting, all those kind of things. These are the kind of things that have been agreed to by the members that they basically say, this is the rules we want you to apply to us to govern our competition. So, yes. The board could all be employees of private schools. In fact, in Chicago, everybody can take notice it's overwhelmingly public schools, yet the last two elections have gone to a private school member there. That could happen throughout the state. Interestingly, there is a guaranteed seat for a private school member on the board, but it could happen that every board member could be public. I'm sorry, could be private. Day-to-day operations are the responsibility of an executive director and his staff, not government employees. Don't qualify for government retirement programs, plans, or any other benefits available to government employees. Could I ask one last question? Could I ask you a question here? We've had some of the argument is that we should be thinking about factors and tests that are used in other contests, toward Immunity Act or state action. Can you talk to me about state action? Why shouldn't we adopt some of the ideas that the federal courts have used in terms of state action in relationship to 1983 actions? Your Honor, there's a couple of issues on that. Number one is, as the Bregner case said, it is a different definition. Certainly, the legislature could have said, any organization that is liable for civil rights we're going to consider to be a government entity. But it's a different definition. If you think about it, though, in the civil rights context, the members have an agreement among themselves that these are the rules that are going to govern our competition. And that agreement among the member schools is what excludes a person from competition and may constitute a civil rights violation. So it makes sense in that respect, if you say, well, the member schools entered into this contract resulting in a civil rights violation, why civil rights liability would attach? That is quite different from saying that that now opens the door such that IHSA is subject to FOIA for all purposes. And particularly if you look at the documents requested here, we're not talking about civil rights violations. We're talking about accounting and legal contracts and sponsorship agreements so that we can do our tournaments. So I think that there is very much of a distinction, as you recognized early in the discussion, it's apples and oranges. If the legislature, and they've had ample opportunity to broaden the definition, wanted to, they could. And just in closing, I think that it is important to notice that when the legislature does talk about the IHSA, they don't regulate it directly. And if you look at the various statutes, what they say is, no member school shall join an association that does X, Y, or Z. They don't say IHSA can't do this or this or this. So again, the focus is on what the member schools can do. Obviously, it's going to impact what the IHSA does. But theoretically, the IHSA could say, you know what, we're not going to do that, and if the members can't join us, so be it. There's no direct regulation on the IHSA by state government. And I think with that, my time has expired. I would ask that the Court affirm the decision of the lower courts. Thank you. Thank you. Good morning. May it please the Court. Counsel. My name is Jeff Galitz, and I represent the defendant appellee at Consolidated High School District 230. This case is a dispute between the BGA and the IHSA. District 230 is essentially an innocent bystander caught in the middle because of documents over which it doesn't have control or authority and no duty to obtain because the BGA wishes to use the school district as a conduit to gain access to IHSA documents. The interest of the school district in this case is one shared by all public bodies of Illinois, and that is the scope of its and other public bodies' obligation under Section 7-2 of FOIA to serve as such a conduit. In my brief time, I want to make three points to the Court. First, the exposure to liability that this Court would create for public bodies if it adopted the test under 7-2 as advocated by the BGA would be significant. If Section 7-2 requires the broad access to all the contractor's records, then FOIA requesters will undoubtedly start making FOIA requests of public bodies and using FOIA as a mechanism to gain sort of a competitive advantage as to other contractors. And this is the case when public bodies have no subpoena authority, no authority or power to require enforcement of the request of the contractor. So even if they made every effort to obtain the documents from the contractor, they're left with no recourse but to hope the contractor complies. This could lead to a mountain of litigation that public bodies have no power to thwart or to avoid, and that's why, as we propose the test in our brief, one of the critical elements, as stated in the statute, is that the records have to be public records first and foremost before even getting to the analysis of governmental function and on behalf of and so on. The public records requirement actually has substantive impact here, and it's logically tailored to the situation that we're dealing with. A document that qualifies as a public record, as this Court well knows, pertains to the transaction of public business and then is either prepared by or for, used by, received by, right in the possession of, or under the control of the public body. In other words, the public body has some means to gain access to the documents to then turn them over to a FOIA requester. So we urge this Court to read the statute as it's written, as we're all required to, and require that the records first be public records of the public body before 7-2 is triggered. Secondly, Section 7-2 of FOIA works perfectly well when it's applied as written and with a measure of common sense. The approach that the BGA is advocating requires this Court to ignore statutory terms, ignore statutory language, ignore the fact that the wording in 7-2 is narrowly tailored, and also ignores the fact that public bodies have no means to enforce the obligation that they're proposing. Section 7-2 doesn't expand on what's covered by FOIA. What it does is it expands where a public body has to go and search for the records. So take the simple example of a school district that provides busing duties. The records relating to its busing, you know, the performance of busing duties, would be subject to FOIA directly to the public body. And if the public body then subcontracted out that function to First Student or Durham or any number of the private contractors that perform busing services, the same kind of records related to that district's students and the transportation of, you know, running that district's bus routes, would appropriately be subject to Section 7-2. And a public body would have an obligation to request those and turn them over. But again, what the BJA is proposing here, and it even acknowledges it in the example of the Hood letter that we've both discussed in our briefs, that the obligation under 7-2, we don't have to worry about whether it's a public body, really. We kind of sidestep that issue. And we're going to fashion a new rule for what's a governmental function. So in the Hood case, not the actual case, but the underlying facts, there was a letter, a disciplinary record letter from the IHSA regarding a coach in Rockford. And the BJA would have District 230, right, in the south suburbs, have an obligation to obtain that record from the private school in Rockford and then turn it over. It's an unworkable test, and we don't think it's what the legislature required. Your time has expired. You can conclude. Thank you very much. The last one I want to make is this. If the IHSA is a public body and is itself subject to FOIA, then District 230 shouldn't even be here. The one case cited by the BJA against that, Twin Cities v. Raynard, involved two public bodies, both of whom had access to the records. We don't think that's the case here. We don't think District 230 had an obligation to attempt to obtain the records from the IHSA, and therefore we ask this Court to affirm to the lower court. Thank you. Rebuttal. Thank you. I'm going to start with Mr. Bressler's comments about the money or the questions about following the money. I think the simplest way to think about it is this. If public schools stopped having sports entirely, they all stopped, we're no longer going to spend tax dollars on sports, IHSA would not be able to do what it does. It couldn't make money from all those events that it talks about if there aren't teams to compete. And the only reason that there's teams to compete is because the public funds those teams overwhelmingly. And so that's what really matters here when it comes to the question of financial support, is if you just think of it this way, if you take away the money that's spent by school districts on sports, could IHSA do what it does? And the answer is that it could not. There is also a bit of a dispute about the capacity in which the board members act. I do want to go to the statements in Hood, and I also want to take the opportunity to just briefly talk about why those statements should be considered and should have been considered. So we are not arguing that IHSA is judicially estopped from arguing against those facts. This is a 2619 case. What we're saying is that those are party admissions. Those are factual admissions they made, and they can come and they can explain why the facts are actually the opposite of what they told the appellate court in the Hood case when they were trying to get tort immunity. They're allowed to do that. But what we can't do is just forget about those statements entirely. And what the circuit court and the first district did was say, well, those aren't really facts, those are legal arguments. There doesn't actually seem to be a lot of law in this question of what's the line between a legal argument and facts, but I would point out that those are very factual things that they had argued, and I would say that we should err on the side of considering those things to be party admissions because the party can always come in and explain them. It's not an estoppel. It's just simply a matter of whether that piece of evidence can be considered. But as to the question of the capacity in which the board members serve, I think there it's even more factual in nature than some of the other things that have been pointed to. I would point you to page 139 and page 144 in the appendix, which are statements, again, from the Hood case. On page 139, board members act, quote, not as individuals but by virtue of their positions as principals. They also said that they act as, quote, representatives of public schools. Page 144 stated that board members, quote, are employees of local public entities acting in a representative capacity. That is very, very factual. That is not even legal argument characterizing control or something like that. So the notion that these board members aren't acting in their capacities, principal, there is more than adequate facts to the contrary on that point. Do the bylaws and Constitution use those terms? I would have to look. The bylaws and the Constitution are in the record. They're in the appendix, and I don't know the answer to that question. And they were attached to your complaint. Correct. Yes. So those are clearly in the record in terms of what the capacity in which they're serving. Let me turn to the state action question. The main thing I would point out to start is that IHSA itself relied on state actor cases earlier in these proceedings. They relied on state actor cases in Hood. They relied on the fact that they were a state actor to say we should get tort immunity. And they're arguing extensively in their brief that the test you should use for public body is the tort immunity test. So if A equals B and B equals C, then A has to equal C. If state actor is the same as immunity, immunity is the same as public body, then state actor must be the same as public body for FOIA purposes. So it's in couple with I think the Tennessee case very clearly establishes that that is a relevant thing to look at as well. And there is a logic to connecting these two things. If an entity can act under color of law, then there's a particularly acute need to allow the public to oversee that entity under FOIA, which is the FOIA preamble makes clear. That's why we have this statute is so people can monitor their government. And we ought to be able then to monitor them in order to avoid those violations potentially happening in the first place. I would point out too on the state actor point that the reason they were a state actor, found to be a state actor, had to do with the nature of the membership. That they were overwhelmingly comprised of local school districts who were public. And that same, there is no real difference between the relevant of that in the state actor context and the relevant of that in the public body context. The fact that they are owned and controlled by local school districts. Even if that's just used figuratively, there's no dispute that they are a membership organization. And it's important to note that in response to the Hood case, when they didn't succeed in getting tort immunity because of their corporate form. It was because they were not a not-for-profit corporation. They were a voluntary association. They could have just changed their form. And then they could have re-argued that, well, now we get tort immunity. But they didn't do that. And that's telling because it shows that the nature of this entity is not really like a separate corporate entity. It's made up of its members. And when those members are overwhelmingly public, then that leads to the conclusion or supports the conclusion that they're subject to FOIA as public bodies. It's difficult to even sort of separate the two things from each other. I'm going to turn then to the comments and the arguments from District 230. So District 230 portrays itself as sort of an innocent bystander in this case. As I read the statute, the requester does not have a direct claim against the equivalent of IHSA here, against the government contractor. You have a claim against the public body. Section 7-2 plainly says that the public body has an obligation to produce those records. So their complaint is really a complaint with the General Assembly that this is difficult, that this is unworkable. And I don't think that they are. I think that at the very least they need to ask for those records, which they never did here. It isn't as if they said, well, we'd like to help you, BGA, but we just can't. They won't give us the records. They didn't. They didn't ask for the records even in the first place. So if there are complexities, I think they can be overcome. And those are things that really should be directed to the General Assembly in any event. This idea of competitive advantage and that you could, you know, competitors could use FOIA then to get this information, two points. First is some of that information already could be FOIA from the government entity itself, for example, a contract. But the bigger point, the more important point is that's an exemption issue. There are a lot of exemptions that cover things even like proprietary information and trade secrets. That's the way that you protect against that issue, and the statute already makes that very clear. In terms of the question of whether the records have to first be public records in the first place, I don't have a lot of time so I won't go in great detail, but we laid that out in the brief why that's wrong. It really would render Section 3A superfluous to say that you first have to find that they are public records. And throughout the statute, the General Assembly has used the terms records and public records largely interchangeably, sometimes in the same provisions, sometimes even in adjacent exemptions. And so I don't think you can read a lot into that, especially when it would render the Section 7-2 superfluous. But even if we need to do that, let's go to the test for public records. Part 1, does it relate to public business? Well, if it relates to a governmental function, then it necessarily is going to relate to public business. And Part 2 is sort of this prepared by or for or under the control of. These were prepared for IHSA members because what they do is for the benefit of their members. And really what Section 7-2 is, it legally places those records within the control of the public body. And so when you read those things together, it makes perfect sense. So even if we needed to show that in the first instance these are public records under the definition of public records, we lay out in a brief exactly why we're able to do that. I don't have any further remarks, but I'm happy to answer any questions. Seeing no questions, thank you. Thank you. Case Number 121-124, Better Government Association v. Illinois High School Association, High School District 230, will be taken under advisement as Agenda Number 6. Mr. Topic, Mr. Bressler, Mr. Galich, thank you for your arguments today. You're excused with our thanks. Mr. Marshall, the Illinois Supreme Court stands adjourned.